## Savitz v. O. & M. Ry. Co.

1.  *Railroads—Unlawful Discrimination.*—To maintain an action against a railroad under the provisions of Chap. 114, Revised Statutes of Illinois, for an unjust discrimination, it is necessary to prove that the company has violated the provisions of said statute, and is guilty of an unjust discrimination to the damage of the party bringing the action, in demanding, charging, collecting and receiving from him for the transportation and delivery of freight, a higher and greater rate of toll and compensation than it, at the same time, charged, demanded and received from others for the transportation and delivery of a like quantity of freight of the same class, from the same point, in the same direction, and over an equal distance of its railway.

2.  *Railroads—What is an Unjust Discrimination.*—Where a railroad company fixed two rates on all coal transported over its road from points between ten and fifteen miles from the city of East St. Louis to said city, one at forty-five cents per ton, and one at thirty-one and a quarter cents per ton, and both rates were public and uniform, and open to all coal shippers alike, and that shippers knew at the time of shipments by them of the existence of such rates, and could have availed themselves of the lower rate if they had seen fit to do so, *it was held* that such rates did not amount to an unjust discrimination within the meaning of the statute.

**Memorandum.**—Action for unjust discrimination. Appeal from a judgment for the defendant rendered by the Circuit Court of Saint Clair County; the Hon. Benjamin R. Burroughs, Circuit Judge, presiding. Heard in this court at the August term, A. D. 1892, and affirmed. Opinion filed September 8, 1893.

The statement of facts is contained in the opinion of the court.

Appellant's Brief, John G. Irwin and Charles E. Wise, Attorneys.

At common law unjust discriminations are illegal, and all railroads in this State hold their charters under an implied

obligation to perform and fulfill this common law duty of exercising their franchises and privileges without injurious discriminations against any class of patrons, or in favor of any other class. Vincent v. C. & A. R. R. Co., 49 Ill. 35; The People v. C. & A. R. R. Co., 55 Ill. 111; C. & N. W. R. R. Co. v. The People, 56 Ill. 365; C. & A. R. R. Co. v. The People, 67 Ill. 19; I. C. R. R. Co. v. The People, 121 Ill. 310.

Discriminations made in good faith because of differences in expense of carriage, and proportioned with reference thereto, are just, and not within the purview of the statute. But it devolves upon the railroad company relying upon such facts as a defense to a suit for unjust discrimination, to prove them to the satisfaction of the court. I. C. R. R. Co. v. The People, 121 Ill. 318.

While mere inequality in charges does not, of itself, amount to unjust discrimination, it becomes such when a discrimination in rates is made for the transportation of goods of the same class for different shippers under like circumstances and conditions. Hutchinson on Carriers, Sec. 302; Scofield v. Railway Co., 43 Ohio St. 571.

Appellee's Brief, Pollard & Werner, Attorneys.

This suit is based upon a penal statute, and all the rules applicable to the enforcement of penal statutes require that it should be made clearly to appear that the precise statutory offense has been committed. C., B. & Q. R. R. Co. v. The People, 77 Ill. 443; Kankakee Coal Co. v. Ill. Cent. R. Co., 17 Brad. 614.

The issue is, was there an unjust discrimination? It must appear not only that the company made a discrimination in its rates, or charges of toll, but that such discrimination was an unjust discrimination; and the company can successfully defend by traversing the allegation that there was an unjust discrimination. C. & A. R. Co. v. The People, 67 Ill. 21; St. L., A. & T. H. R. Co. v. Hill, 11 Brad. 252; Same v. Same, 14 Brad. 587.

Savitz v. O. & M. Ry. Co.

OPINION OF THE COURT, PHILLIPS, P. J.

This is an action of assumpsit brought by plaintiff under the provisions of Chap. 114, Rev. Stat., and the declaration contains two counts. The first count avers that the plaintiff was the owner of a coal mine in the county of St. Clair, called the Union Mine, situated between ten and fifteen miles east of East St. Louis, and avers that the Consolidated Coal Co. was the owner of several mines known as the Garstide, Mentar and Alma mines, and that all of these mines are on the line of defendant's road, between ten and fifteen miles east of East St. Louis, and that the plaintiff's mine is nearest to such point, and avers further that a large quantity of coal was mined from these several mines and shipped to East St. Louis, between April 1, 1889, and January 1, 1891. Further alleges, the plaintiff was compelled to pay forty-five cents per ton for all coal carried from his mine, while the Consolidated Coal Co. paid but thirty-one and one-fourth cents per ton for the coal carried from its mines, and alleging the unjust discrimination was an injury to the plaintiff. Declaration also pleads the schedule as adopted by the railroad and warehouse commissioners, whereby the maximum rate of coal was fixed at fifty cents per ton within a distance of fifteen miles. The second count is substantially like the first except that it avers the Consolidated Coal Co., owned and operated a mine named the "Breese" mine, between thirty-five and forty miles from East St. Louis, and that the rate for the Breese mine was seventy-five cents, and the rate charged by defendant was thirty-seven and a half cents, and that the defendant hauled for the Consolidated Coal Co. to East St. Louis from said mine 14,000 tons of coal at thirty-seven and a half cents per ton, while the maximum rate as fixed by the railroad and warehouse commissioners was seventy-five cents per ton, and that the coal was hauled for the Consolidated Coal Co. at a proportionally less rate than demanded and received from plaintiff.

To the second count of the declaration a demurrer was sustained and a plea of general issue filed to the first count

and a trial before the court without a jury resulted in the finding and judgment for defendant. To maintain this action it was necessary to prove that defendant had violated the provisions of the said statute and was guilty of an unjust discrimination to the damage of plaintiff, in demanding, charging, collecting and receiving from plaintiff for the transportation and delivery of freight a higher and greater rate of toll and compensation than it, at the same time, charged, demanded and received from the Consolidated Coal Co. for the transportation and delivery of the like quantity of freight of the same class, from the same point, in the same direction, over an equal distance of its railway. It appears from the evidence that plaintiff, between the dates mentioned in said first count, shipped from his mine, over defendant's road, to be delivered in East St. Louis, large quantities of coal, and was charged by and paid to defendant for the transportation and delivery thereof forty-five cents per ton, and during the same period the Consolidated Coal Co. shipped from its said mines large quantities of coal over defendant's road, to be delivered in East St. Louis, and was charged by and paid to defendant for the transportation and delivery thereof, thirty-one and one-fourth cents per ton. The coal so shipped by plaintiff was what was known as commercial coal, and consisted of lump, nut coal, and sometimes slack, and was used by consumers generally. The coal so shipped by the Consolidated Coal Co., for the transportation and delivery of which thirty-one and one-quarter cents per ton was so paid, was known as railroad coal, which consisted of unscreened coal, the run of the mine, as it was termed by witnesses, and was furnished to and used by railroads exclusively.

The Consolidated Coal Co. also shipped from its mines during said period commercial coal over defendant's road to East St. Louis for the transportation and delivery of which it was charged by and paid defendant the same rate, forty-five cents per ton, as plaintiff paid defendant for the same service. Good reason appears for this difference in the rates charged for the transportation and delivery of the two classes of freight. Commercial coal was shipped by plaint-

iff in small lots, averaging about two cars a day; these cars were put in a train of fifteen or twenty cars made up of cars from different mines loaded with commercial coal. These cars belonged to and were furnished by the defendant, and upon arrival at East St. Louis the train was broken up and the shipper designated the final destination he desired each car should be sent to. This involved much switching service, detention of defendant's cars for several days and loss of the use of them during such detention, and the wear and tear of cars belonging to defendant. The railroad coal was shipped to and used by railroads in Missouri and points west; was not sold on the market or used for domestic or manufacturing purposes. This class of coal was hauled in cars belonging to and furnished by the roads using it, and defendant was thus relieved of the duty of providing cars to carry such freight tendered it, and merely furnished the motive power and necessary train-men to transport the coal over its road to East St. Louis, in trains consisting of not less than twenty cars. On arrival there the entire train, intact, was delivered to connecting roads, and this delivery completed defendant's contract for carrying and delivering that class of freight. It was further shown that this rate of thirty-one and one-fourth cents per ton was the uniform, general and public rate that had been charged and collected for several years by defendant for carrying railroad coal from said mines to East St. Louis. Shippers of coal knew of this rate, and if they wished to do so could have had the benefit of it. We do not hold that the fact that railroad coal is shipped in trains composed of a large number of cars, and commercial coal is shipped in less quantities, and in trains with less number of cars, of itself cuts any figure in determining the question submitted to us. It also appears that during the two years in question the Consolidated Coal Co. shipped about 180,000 tons of commercial coal from its said mines over defendant's road to East St. Louis, and paid the rate of forty-five cents per ton for its transportation and delivery, while during the same period plaintiff shipped from his mine to the same destination over defendant's road

less than one-tenth that quantity of coal and was charged and paid no greater rate.

We are unable to discover in this record evidence of unjust discrimination to the damage of plaintiff as averred. The facts justified defendant in charging and receiving the higher rate for the transportation of and delivery of commercial coal in East St. Louis, and no discrimination in favor of the Consolidated Coal Company was made with regard to this class of freight, but said company was charged and paid the same rate that plaintiff paid for like service rendered by defendant. The less freight rate fixed for transporting and delivering railroad coal in East St. Louis, was also justified by the facts proven, and we fail to perceive how plaintiff could be injured by giving the Consolidated Coal Company the benefit of that rate. That class of coal was all shipped out of this State, and did not come in competition with the class of coal shipped by plaintiff, and he could have had the benefit of the same low rate if he desired to ship railroad coal over defendant's road from his mine to East St. Louis, subject to the same condition with respect to furnishing cars and mode of delivering them, that were imposed on the coal company, for like service. The propositions submitted on behalf of defendant were in harmony with our views expressed, and also expressed in L. E. and St. L. Con. R. R. Co. v. Crown Coal Co., 43 Ill. App. 228, and were properly held to be the law by the trial court.

The judgment is affirmed.